This is Perrong v. Bradford, 24-1925. Whenever you're ready, counsel. Mr. Myers, how are you? Good, Your Honor. How are you? Good afternoon. My name is Carl Myers from Stephens and Lee, and I'm here on behalf of Representative Matt Bradford, the Majority Leader of the State House of Representatives and the State Representative for the 70th Legislative District, and I'd like to reserve five minutes for rebuttal. Representative Bradford is asking this Court to reverse and remand for entry of judgment in his favor on sovereign immunity grounds, on qualified immunity grounds, or both. This case arises in the context of the Pennsylvania House's record calling system. The House contracted for that system, set it up, paid for it, houses it, and runs it. That system is solely to be used for public service announcements. Let me just get right to some of the issues. Sure. The District Court came to the conclusion, as I read his opinion, that your client was suing in his individual capacity. Correct. Is that correct? That was his conclusion. Is that conclusion correct? It is not correct. It is not correct. So that turns to the sovereign immunity analysis. We'll start there. The District Court finally got one thing wrong, and that is that the form of the complaint, the caption, and the labeling of the claims is not determinative. What is determinative is substance. That's the Pennhurst analysis, and then the Pennhurst analysis was applied in the Fourth Circuit in the Cunningham case. Basically, we look at how the effects of a judgment would operate against the State. It isn't just the payment of a money judgment. The analysis is, would the State be required to do something or refrain from doing something? And here, the District Court candidly acknowledged that. Judge Wilson said, it may be that State representatives reading this opinion may stop making recorded calls as a result of my ruling. And that proves the point, which is that under Pennhurst, the State is being required to change its operations to modify its procedures as a result of a judgment that's been had. Those modifications would not be that severe, however. These are constituent services that he was providing. Correct. They're constituent services. But everyone agrees that that's an essential part of a State representative's job functions. That was the Chang case that was acknowledged. It was acknowledged by Judge Wilson here. We all expect that State representatives are going to provide constituent service. Part of the, you know, the only way that a State representative can provide that service is if the representative has the ability to communicate with his or her constituents. And it's essential for them to be able to do so, including by recorded calls. Your friends on the other side say, look to Lewis' case. That answers this. If you have a person who's sued in their individual capacity, they're going to have a judgment against you, then sovereign immunity doesn't apply. They say, all right, look to Lewis. Just like that person there was sued for negligence, this is no different. You've got an individual here being sued under the TCPA. It's a claim against this individual. It's a judgment against the individual. Why doesn't Lewis answer the question? So what's going on in Lewis is Lewis is a standard tort judgment for money damages. That's what was sought there. So that was a car accident case. And the court actually took pains to say what's going on here is simply a payment of the judgment. And the court actually said, Justice Sotomayor said, we don't have any request to change the operations of the tribe. We don't have any request to change the operations of the tribe. This isn't going to affect tribal operations. It's just going to be the payment of a monetary judgment. Here we have both elements. So it's payment of a monetary judgment and a change in operations. That's actually what Judge Wilkinson explained in the Cunningham case. What would be the monetary judgment in this case? The Commonwealth of Pennsylvania would. It's going to come out of taxpayer money. It would not be the individual. That is correct for two reasons. One, as everyone agrees, there's indemnity. Judge Wilson acknowledged there would be indemnity in this case. And also, it's in the record. We cited it. There's something called the Employee Liability Self-Insurance Program. It's called ELSIP, E-L-S-I-P. I think I got that right, Employees Liability Self-Insurance Program. That pays any judgment against a state representative. The House of Representatives and the Senate take part in the ELSIP program. So Representative Bradford is not going to go out of his pocket a penny for this case. I, myself, I was engaged by the House. I was not engaged personally by Representative Bradford. So he is not going to be affected personally in any way, shape, or form by the outcome of this lawsuit on a monetary basis and then also on an operational basis. But that's, I want to emphasize, and I would encourage the court to take a look at Judge Wilkinson's opinion in the Cunningham case because it's this case. It's the exact same thing as this case. Actually, I think this case is a stronger case than the case in Cunningham. There it was a lawsuit against three individual employees of HHS, suing them in their, allegedly, in their personal capacities because they participated in a recorded calling program to tell people about the Affordable Care Act. Here's a phone number you can call to get Affordable Care Act coverage. And a plaintiff tried to sue employees within HHS. And Judge Wilkinson wrote for the Fourth Circuit, this would be chaos if we allow this to proceed. If we don't hold sovereign immunity that protects these people, then there's going to be falling on lawsuits, artful pleading. We have to look at the substance of what this lawsuit is really about. It's not just about monetary damages. This plaintiff is going to scare the federal government into stopping these recording calls, recorded calls. And that's why the government's entitled to sovereign immunity. That's what was going on in Pennhurst. Pennhurst was an attempt, ostensibly it named Pennsylvania state officials, but the Supreme Court Justice Powell wrote the opinion and basically said, well, you've named state officials, but in effect, you're trying to get the Commonwealth of Pennsylvania to close hospital institutions and open new ones. This is operationally going to operate and have effects against the operations of the sovereign state. I'm sorry. What about if we found there was qualified immunity but not sovereign immunity in this case? I mean, obviously, we would take a judgment either way so long as and immunity or a combination of immunities protects Representative Bradford. That's what happened in the Hira case. In the Hira case, part of the aspects of that case, there was protection for the state legislator on sovereign immunity grounds, and a part of it was based on qualified. But, Judge Sirica, on the qualified immunity piece of this, there needs to be a clearly established right. So there needs to be a Supreme Court decision, a binding decision of this court, or a consensus of the circuits holding that the right you're claiming exists. But the FCC and the Ninth Circuit disagreed on this issue. That is correct, Judge Sirica. We have the exact opposite of what the qualified immunity analysis requires. Not only do we not have binding authority sustaining Mr. Perron's right, we have authority going the exact opposite way. We have, in the Chang case, which is the only court that's actually addressed the question of whether this right exists, the Ninth Circuit didn't even give it the time of day, one paragraph, and said, I mean, why are we even here on this? There's no question there is no right. And the reason for that is because the term person under federal law never includes the sovereign, and that is the Vermont agency case, the return mail case, and I think Judge Wilkinson called it a stooled redwood of jurisprudence. That person never includes the sovereign unless you have some affirmative showing in the statutory text that Congress intended to apply a statute to a state. And here we don't have that. And that's what led the FCC, when they're interpreting the TCPA, to say, we're just going to apply this straightforward rule of Supreme Court jurisprudence under Vermont agency and under return mail. State actors are not persons under the TCPA. That's what led the Ninth Circuit to then say, you can't sue legislators under this statute. End of story. And so the Ninth Circuit, the district court in Chang, said, sovereign immunity applies. The Ninth Circuit says, we don't even need to touch sovereign immunity because this statute doesn't apply in the first place. So, Judge Sirka, that's a long-winded way of answering your question, which is, is there qualified immunity? And the answer is yes, because there is no clearly established right. There is no clearly established right to be free or not receive public service announcement phone calls from state legislators. The law is the exact opposite. There is no right to be free of that. And the reason for that is because these actors are free to make those kinds of communications to their constituents. What about injunctive relief under both immunity, sovereign immunity and qualified immunity? So it applies to either. In this case, it's a request for monetary relief. Mr. Prong is not making a request for injunctive relief. But those protections would apply if we had both of those. I think this is an open and shut case on sovereign immunity. Obviously, I have, I'm representing a client. But I think under either analysis or a combination of the two analyses, I think this isn't really a close case. And I'll close by saying, you know, I'm going to make an observation, which is that Judge Wilson denied the motion to dismiss filed by Representative Bradford. And in that denial said, I need to have fact development. And some of the reasons for that are, I don't know if this was for politics. I don't know if this was who paid for these calls. I don't know if they were placed from an office number. And so he put the parties through six months of discovery. My client responded with two sets of written discovery, produced two witnesses, including Representative Bradford himself and a senior communications official. We produced over 1,000 pages of documentation. Not a shred of evidence ever suggested at any point that any of this was personal in nature. Yet the district court ruled against Representative Bradford anyway. So we'd ask this court to reverse that decision. Thank you.  Good afternoon, Your Honors, and may I please the court. The TCPA prohibits any person from making a call with a prerecorded voice. Representative Bradford is a person. He sent five prerecorded calls to a protected telephone number with a prerecorded voice. That action violated the plain language of the statute. Are you pursuing a claim against, you are your client, right? Yes, sir. So is the target here Bradford in his personal or his official capacity? The lawsuit was filed against Representative Bradford in his individual capacity, not his official capacity, Your Honor. And that was, this was an individual capacity suit from the very beginning. Bradford was required in order to show his entitlement to sovereign immunity that this was an official capacity suit. He had six months of discovery to do so, and he wasn't able to prove that. When you think of counsel's representations that any judgment would be paid by the Commonwealth, his fees are being paid by the Commonwealth, and that the sort of conduct you're seeking to stop or enjoin would be official business. Well, Your Honor, as an initial matter, although the TCPA does provide for injunctive relief, injunctive relief is not being sought in this lawsuit. But I think Lewis answered that question, and I think that there's a quote in Lewis that essentially the Supreme Court recognized that a monetary judgment out of that case would ultimately be paid by the tribe, which, of course, assuming its official capacity, would have immunity. And the court said at the end of the day, whose pocket the judgment comes out of doesn't end the analysis, and it doesn't even begin the analysis. It's whether or not, as Pennhurst explains, it's whether or not the judgment would bind the Commonwealth. Let me ask you a question. Yes. Your friends on the other side essentially are arguing, look, the effect of this will chill a way that the Commonwealth communicates with its constituents. That's the effect of this. Yes, it might be that the individual judgment is against Bradford, but that's not where this ends. This ends with a complete chilling of a way to communicate with constituents. And so the effect of this is truly against the Commonwealth. What's your response to that argument? Well, Your Honor, they can still contact constituents with prerecorded messages, so long as they have consent from a constituent. So if a constituent signs up and says, hey, I want to receive these calls, they can still contact a constituent. They can contact a constituent via live calls, non-prerecorded calls. They can still contact constituents via e-mail and postal mail as well. Moreover, Your Honor, perhaps there's some way to structure this in a way that the Commonwealth itself is sending out calls with a voice, in which case there would potentially be some sort of sovereign immunity if the Commonwealth itself is voicing those messages and saying, you know, we want to inform you about the legislative things at large. So an avatar as opposed to an individual? Well, Your Honor, well, the message would still be the same, but potentially in that situation if the Commonwealth itself is sending the call, the Commonwealth might be entitled to immunity. You know, our briefing, though, Your Honor, and this brings – So Bradford says come to the farm show or whatever it might be, right, as opposed to somebody else, an avatar saying come to the farm. The message is the same. Well, I think that Chang is particularly instructive on this point. First, I note, Your Honor, that state governments under the provisions of the Communication Act are considered to be persons. It doesn't explicitly say in the definition that state governments are persons, but in the Head and DuMont Labs decisions that I cite in the brief, those cases essentially say states are still subject to, for example, radio licensing requirements imposed by the Communications Act. The TCPA is also part of the Communications Act. So it follows if a state government still needs to obtain a radio license to put up a radio tower or to transmit with a walkie-talkie, then a state government also needs to abide by the TCPA. It's not immune from the TCPA just because it's a person, and that's why the recurring mail and DuMont agency cases are distinguishable. Moreover, Your Honor, in terms of the state sending it, and this is where Chang is different, Chang, I believe, was a town hall with multiple representatives of the United States House of Representatives that were sent, and the calls were then sent from the U.S. House of Representatives to foster discussion among multiple representatives. So this is, that's also how Chang can be distinguishable, and that's to go to Judge Montgomery's question about how can the Commonwealth still potentially make these calls or how would this decision not show speech. And the ultimate question is, I don't, those facts are not before us here, but there are potentially some ways that the Commonwealth could craft a program to where it might be entitled to immunity. I respectfully submit, Your Honor, that you need not reach that question today. What we have here is a representative that directed the calls, thought about, hey, I want to make a call about a shredding event, had his staff create a script, read the script, presumably would have approved that script because he, you know, if he didn't agree with it, he wouldn't have read it, dictated the contents, and then sent it off for approval and ultimately to be sent. So ultimately, the only involvement in the Commonwealth for this case was in using its system to send out the calls. It didn't have anything to do with what the representative wanted to speak about. It didn't dictate what the representative wanted to speak about. That was entirely Representative Bradford acting in his own individual capacity. And moreover, Your Honor, I think that this- He's an active state legislator, right? Yes, and I think that this is why, you know, to the extent that Brewster and Hira are very much supportive of our position here. In his position as a legislator, that is a legislator's duty is to legislate. It's certainly an adjournment activity for a legislator to have constituent communications and keep in contact with constituents. There are some legislators that do more of that or some legislators that do less. And ultimately, I think, you know, if a legislator is not communicating with their constituents, that then becomes a political issue of whether or not they're going to win the election, if they're seen as not being responsive to the needs of the community. So I think that that's where Brewster, even though that discussed immunity for legislative- for immunity, the facts in Brewster were that there was a libelous newsletter that was sent out. Under court principles, if you're publishing libelous material in a constituent newsletter, you're going to be personally liable for that. And that's sort of the same decision that this court came to in Hira, which confirms that ultimately if a legislator- a legislator's duty is to legislate. That is their official function. If they also have some ancillary functions, those are perfectly legitimate, but they're not official functions qualifying or entitling them to sovereign immunity. On the qualified immunity front, Your Honors, I think that if there's no sovereign immunity, ultimately you're going to have to find that there's no qualified immunity. And this argument was addressed in the tail portion of the brief. And the crux of the argument is, if Bradford is a- the crux of the argument is, if you find that Bradford is in person under the Telephone Consumer Protection Act, he's necessarily not entitled to sovereign immunity. So then the question shifts to qualified immunity. And if he's a person under the TCPA, that's plainly violative of the statute, because if he's a person under the TCPA, he must be a person full stop, subject to the statute. And at that point, his qualified immunity argument falls apart, because it's been clearly established through three Supreme Court decisions and multiple circuit courts of appeals, that 47 U.S.C. 227, B1A, Romanette 3, prohibits prerecorded calls to cell phones and numbers for which the call party is charged for the call. And ultimately, I think part of this is the TCPA, up until the Supreme Court's decision in Barr v. American Association of Political Consultants, had had an exception in the TCPA for robocalls made to collect government debt. So Congress does not put exceptions into a statute when it feels that there's immunity. So ultimately, the Supreme Court held that that was an unconstitutional, content-specific restriction on speech and excised that portion of the statute from the TCPA. But ultimately, if I'm a reasonably prudent state legislator looking to send calls, and I see that there's an exception for one type of call, government debt, that puts me on notice that if I'm a person subject to the statute, and if the only exception seems to be for government debt, and I have a long history of states being subject to other provisions of the Communications Act, I respectfully submit, Your Honors, that that would then say, hey, I probably am not subject to either sovereign immunity or qualified immunity, because that's a very clearly established statutory right that was violated. So no matter how you slice it, I think there's adequate basis to affirm on both prongs that Representative Bradford seeks reversal. And then I think ultimately, at the end of the day, it comes down to what the job duties are, and how Representative Bradford was acting. And some error of legitimacy, because you're operating as a state representative or using state resources to place calls, doesn't transform a non-legislative, unofficial activity into an official legislative activity for which there's immunity. The record at the district court established that Representative Bradford's not entitled to immunity, and that he was acting in an individual capacity when he sent these calls. And ultimately, to the last point of whether or not a judgment would bind the Commonwealth, I think that, like Lewis argues and ultimately argues, the knock-on effects are insufficient to constitute anything, an action that would bind the Commonwealth. If you'd like, Your Honors, I could also discuss the distinctions between Cunningham or Pennhurst, or I welcome any other questions the Court may have. The last thing you just said, let's assume we affirm Judge Wilson's decision and agree with you. Yes. How would that not bind the Commonwealth? Well, ultimately, it would be a low four-figure judgment against Representative Bradford, which ultimately, as my colleague on the other side mentioned, probably would be paid out of the self-insurance program. But ultimately, Lewis says that that's not the ultimate issue of whose pocket it comes out of. And there's not going to be any sort of restriction on what the Commonwealth can't or can't do. Well, there's no request for injunctive relief. And as I mentioned, Your Honor, I'm not going to bring another lawsuit the next time I get a phone call. Well, Your Honor, there's adequate, more than adequate alternative methods of communication. They can send text messages. They can send live dial calls. They can send mails and e-mails. Or if they want to send over calls, all we're asking, and all this lawsuit essentially requires them to do, is to obtain consent. And that's not a sufficiently strong enough change to Commonwealth operations to render sovereignty to be applicable here. Ultimately, the same argument could be made with respect to Lewis. If casino drivers are going out in limousines and causing accidents, maybe that causes some procedural change to where there's, you know, limousines are not permitted to leave the casino and drive individuals off past a certain radius or something like that. Or some other measures are implemented in another, you know, in a personal injury case or something like that. Ultimately, I don't think that, you know, ultimately if everything has an effect, it's a slippery slope. It's not like we're hampering a representative's ability to communicate wholesale with her constituents, but only through this one specific method of communication that Congress identified a very specific harm, especially because these mobile calls are unaccountable. You can't talk to them. You receive them on your cell phone when you're driving, when you're doing, you know, critical tasks, when you're sometimes people are charged for the calls. There's another exception under the TCPA. It's a cell phone or a number for which the call party is charged. So ultimately, they can also still make pre-recorded calls to landlines as well. So I don't think that that's a sufficient enough restriction on government operations, Your Honor. So you're not looking for injunctive relief here? I see my time has expired. May I answer the question? Please. No, I'm not looking for injunctive relief, Your Honor. Thank you. I'm going to do my best to respond to some of those points in five minutes. The first point I want to address is the question of a person, you know, whether Representative Bradford qualifies as a person. I think I heard Mr. Prong say that the statute, the TCPA, doesn't explicitly say, unquote, that a state official is a person. That answers this case. That's the end of this case. Because that's an admission that Representative Bradford is entitled to qualified immunity because there is no positive statutory evidence that Congress intended to apply the TCPA to state actors like Representative Bradford. So I think that's binding, and the Court needn't proceed no further. It can simply decide this on qualified immunity grounds and end the case. Another thing Mr. Prong said is this has been an individual capacity case from the beginning. Well, that would be surprising to Judge Wilson because he only, he never explicitly found that Mr. Prong ever said that it was an individual capacity case. Judge Wilson inferred that from what Mr. Prong had alleged. He never said I'm suing an individual capacity. Judge Wilson divined it from the fact that Mr. Prong used Representative Bradford's home address in the caption of the complaint and named him three times as a state representative in the pleading. So in point of fact, he actually didn't name him in his individual capacity. As for Lewis, I want to clarify and point out that the distinction is in this case you have two things, payment of a judgment and a change in operations. That's what puts this case in the Pennhurst line. Lewis is about payment only. In this case, as Cunningham explains in painstaking detail, the necessary outcome, as I think Judge Restrepo, some of your questions indicated, the necessary outcome here is going to be a shutdown of any recorded calling because of the risk going forward of judgment risk. Because, Judge Restrepo, as your question indicated, the next person, once the court's opinion comes out that basically says there is no sovereign immunity, there is no qualified immunity, as soon as they get a call from the Pennsylvania state representative, they file suit and they're home free, not only to standard damages, but probably stepped-up damages because the allegation surely will be made that because of this court's ruling and holding there's no immunity, that there's a knowing violation. So I think the only plausible outcome here, if this court does not reverse and hold immunity applies, is a shutdown of this recorded calling process. And that answers the consent point. Well, they just need to get consent. Well, that's easily said, but it's very hard, if not impossible, in practice. If there are recorded calls made to hundreds or thousands of people, it's inevitable that some people are going to slip through the cracks. And it might not be possible to verify that every single person gave consent. So the practical outcome is going to be a shutdown or narrowing or change of this entire process, which, again, puts us in the penner's line. Colleagues argue that there are alternative ways for legislators to reach their constituents. There are alternative ways, but I don't know that it's a good idea for us to go down the path of narrowing the choices that representatives have in dealing with their constituents. I think it's actually not good for the constituents either. I think we're all presuming, many of us are presuming, that every constituent is able to communicate with the government the same way. That's not really true. Many people are telephone-dependent, and they only communicate with the government through telephonic means. You know, senior citizens sometimes, people in communities of less means may not have Internet access. And so it may be that not every constituent has the ability to communicate by all of the means that Mr. Perron is describing, and they may want to get those telephone messages so that they can get that important information about government programs and benefits that will help them. So I don't know that there's no law that says for sovereign or qualified immunity purposes if there's alternative means that the government actor has to pursue them in order to have an immunity defense. I know I only have 45 seconds. There's one thing I wanted to say that I have to clarify. Mr. Perron made a bunch of factual statements that are just incorrect and flatly wrong based on the record. He said that Representative Bradford directed the calls, had his staff prepare the scripts, dictated their contents, sent the thing for approval, sent the script for approval, and the only interface that the Commonwealth had with this was that this used their system. I would just tell the court to look at pages 10 and 11 of my brief where I provide pin citations showing every single thing that Mr. Perron said is flatly incorrect on the facts. The simple reality is that the facts are exactly the opposite. Nothing here was done by Representative Bradford here in his personal capacity. All the facts show everything was official. Thank you. Thank you very much for your ordinance and your briefs. We'll hear from us shortly.